## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BARRY W. FLETCHER,** | ) | **4:14CV3214** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **BRIAN GAGE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

This matter is before the Court on Petitioner Barry W. Fletcher's ("Fletcher" or "Petitioner") Petition for Writ of Habeas Corpus ("habeas corpus petition") brought pursuant to 28 U.S.C. § 2254 (Filing No. 1).  Respondent Brian Gage ("Respondent") argues Fletcher is not entitled to relief on any of the 31 claims raised in Fletcher's habeas corpus petition.  The Court agrees.

## I.  BACKGROUND

**A.     Conviction and Sentence**

In this action, Fletcher challenges the sufficiency of the evidence presented against him during the state court proceedings.  Therefore, the Court will state the facts of the crime as they were recited by the Nebraska Court of Appeals in *State v. Fletcher*, No. A-08-723, 2009 WL 2767720, at *1–4 (Neb. Ct. App. Sept. 1, 2009) (affirming Fletcher's conviction and sentence on direct appeal).  *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006).

In the early morning hours of March 19, 2007, Matthew Hitzel discovered a stranger in the kitchen of his Lincoln, Lancaster County, Nebraska, duplex.  Earlier that morning, at about 12:30 a.m., one of Hitzel's three roommates, Josh Compton and Compton's girlfriend, Nicole Schultz, were leaving the duplex through the front door, when Schultz saw

a man standing in front of the kitchen window of the duplex about 12 to 15 feet away from her.  Schultz did not know the man, but she could see him from the lights in the kitchen, allowing her to get a good look at his face.  As Schultz watched the man, he pretended to fumble with something and then walked to his vehicle.  Compton then exited the duplex, and they left in his car, observing the man sitting on the driver's side of his vehicle, a compact, red four-door car, as they passed by.  During the two-minute encounter, Schultz testified that the man looked directly at her three times—twice by the window and maybe once on his way to his car.  After Compton and Schulz started driving away, Compton looked in the rearview mirror and saw the man get out of the vehicle and walk toward the duplex.  A little while later, Compton called Hitzel and told him that he had seen a man wandering around outside their duplex and that he thought the man might have gone inside the duplex.

Hitzel left his room to investigate.  He entered the kitchen, which was well-lit, and he encountered a man who had just opened the door and stepped inside the kitchen.  Hitzel, who was about six feet away from the man, stared at him for 10 to 15 seconds before the man fled.  Hitzel immediately noticed that an amplifier was missing and ran upstairs and told another roommate, Brett Ketter, that they had been robbed.  Ketter ran outside to try to locate the intruder and saw a small, red four-door car leaving the area.  Hitzel reported the incident to police shortly before 1 a.m. and described the intruder as a black male, about 5'10" and 170 pounds, having a shaved head, wearing jeans and a jean jacket, and in his late 20s or early 30s.  Hitzel later noticed that he was missing the amplifier head, cords, and pedal switch.

2

Shortly after 2 a.m., Officer Steven Berry responded to a report of a larceny from an automobile that was in progress at 28th and U Streets in Lincoln.  The report indicated that a person seen breaking into cars had been observed driving a small, red four-door car. Berry was in the area of the report and observed one red car in that area with only one party in the car.  Berry turned off the headlights of his cruiser to try to observe the red car without alerting the driver to his presence, but as soon as he reactivated his cruiser's headlights, the driver's door opened and the driver took off on foot.  The driver left the car door open and left the car running and the lights on. Berry pursued the driver, shouting that he was a police officer and that the party should stop, but Berry briefly lost sight of the individual.  Berry encountered another officer on T Street, and since that officer had not seen anyone run by, the officers moved parallel eastbound, Berry in the alley and the other officer on T Street.  Almost immediately, Berry found the party lying face down on the porch of a house and another officer commanding the subject to show his hands.  Berry estimated that from the time the subject jumped out of the car until the time he heard the officer giving commands to the subject, "probably less than 45 seconds" had passed, and that it was "[d]efinitely less than a minute."  Berry testified that Fletcher was the person who was apprehended on the porch and was the person he saw flee from the red car.

Among the items discovered in the vehicle were several car stereos, an amplifier pedal and cords, which were identified by Hitzel as belonging to him, several car stereos, a flashlight, a hammer, gloves, a blue jacket, and a screwdriver.

At 3:53 a.m., back at his duplex, Hitzel was shown a photographic array and identified the picture of Fletcher as the man who had been in his kitchen.  Hitzel stated he was 90 percent certain of his identification.  After looking at the photograph for a few more

3

minutes, Hitzel stated that he was 90 to 100 percent certain.  Approximately 1½ weeks after the events, Schultz was shown a photographic lineup and she identified Fletcher as the man who she saw outside of the duplex.  Schultz described the suspect as a black male, 5'8" and approximately 170 to 175 pounds, not particularly skinny, with short hair. Prior to viewing the photographic lineup, both Hitzel and Schultz read and signed an advisement form.

As a result of the aforementioned events, Fletcher was charged with burglary, theft by unlawful taking, possession of burglar's tools, and three counts of theft by receiving stolen property in the District Court of Lancaster County, Nebraska ("state district court"). The information also alleged that Fletcher was a habitual criminal. Fletcher filed motions to suppress any in-court or out-of-court identifications by Hitzel and Schultz.  The state district court denied the motions, finding there was no evidence that the identification procedures used were suggestive and, in fact, noted that the procedures used were "not the least bit suggestive."

A jury trial was held on April 1 through 4 and 7, 2008, on all charged counts except for one count of theft by receiving stolen property, which was dismissed by the State of Nebraska ("State").  At trial, Schultz testified she was 95 percent certain Fletcher was the same person she saw outside the residence on March 19, 2007, even though Schultz had only stated she was about 70 to 80 percent certain when she viewed the photographic lineup only weeks after the events.  Schultz attributed the increase in her certainty in her identification at the time of her trial testimony to seeing Fletcher in person, which reassured her that she had picked the right person out of the photographic lineup.  Schultz further testified that her identification of Fletcher was based on her memory of March 19 because

4

she would remember Fletcher's physical features.  Likewise, Hitzel identified Fletcher as the intruder he saw in his kitchen in the early morning hours of March 19, and he stated he was 100 percent certain of his identification.  He stated he was basing his identification of Fletcher on his memories of March 19.

Berry testified that a small pry mark was found on the inside of a blue Caprice from which a stereo was taken, the width of which was similar to that of the screwdriver found in the red car.  Berry testified that he had investigated approximately 100 vehicle break-ins and that screwdrivers are commonly used tools in committing such crimes.

Although Hitzel was able to identify the amplifier pedal and cord found in the red car as his, Hitzel's amplifier and amplifier head were never recovered.  Hitzel purchased the amplifier in December 2006 for $390.56 and the amplifier head for $695.49.  A salesperson with experience in buying and selling musical equipment testified that he would offer to pay between $640 and $800 for such an amplifier and amplifier head similar to the ones stolen from Hitzel. He further testified that he would offer to sell the items for between $800 and $1,000.

Mphatso Bokosi testified that on the evening of March 18, 2007, she parked her 1996 white Chevrolet Cavalier in front of her apartment building in Lincoln and locked the door.  The next morning, Bokosi noticed her car's trunk was open, the dash was taken out, the compact disc ("CD") player had been removed, and there was a strip gone on the door. Bokosi identified one of the car stereos that was removed from the red car from which Fletcher was caught fleeing as her CD player.

Similarly, Eric Harms testified that on March 19, 2007, he drove home from work around midnight in his 1989 blue four-door Caprice Classic.  He parked the vehicle on 28th

5

Street, across the street from his residence in Lincoln. He was awakened from his sleep to be informed that his vehicle had been broken into. Upon viewing his vehicle, Harms was able to confirm that his car had been broken into, and he informed officers that his car stereo had been removed from the dashboard and that he was missing a CD holder containing approximately 300 CDs. The bar code on the car stereo found in the red car from which Fletcher was caught fleeing matched the serial number on the original car stereo box provided by Harms. Harms testified that he had purchased the car stereo in June 2005 for approximately $120 and estimated its current value between $50 and $75. He estimated the value of the CDs to be between $400 and $500 and the value of the CD case at $20 to $30.

On April 5, 2008, the jury found Fletcher guilty of burglary, theft by unlawful taking, possession of burglar's tools, and two counts of theft by receiving stolen property. The state district court determined Fletcher was a habitual criminal and sentenced him to prison terms of 15 to 30 years for the burglary, 15 to 30 years for the theft by unlawful taking, 10 to 25 years for possession of burglar's tools, 6 months for one count of theft by receiving stolen property, and 1 year for the other count of theft by receiving stolen property.

## B.   Direct Appeal

Fletcher appealed his convictions and sentences to the Nebraska Court of Appeals (Appeal No. A-08-723). (Filing No. 10-3 at ECF 33–85; Filing No. 11-3 at ECF 2–4.) The same lawyer represented Fletcher at trial and on direct appeal. The Nebraska Court of Appeals affirmed Fletcher's convictions and sentences in a written opinion dated September 1, 2009. *See Fletcher*, 2009 WL 2767720. The Nebraska Supreme Court

denied a petition for further review of the issues on November 18, 2009.  (Filing No. 11-3 at ECF 4.)

## C.      First Postconviction Action and Appeals

Fletcher filed a motion for postconviction relief in the state district court on January 29, 2010.  (Filing No. 10-4 at ECF 11–57.)  On July 28, 2010, the state district court ordered an evidentiary hearing on some of Fletcher's claims, denied relief on all others, and appointed counsel to represent Fletcher in the postconviction proceedings.  (Filing No. 10-4 at ECF 94–103.)

Fletcher appealed from the state district court's July 28 order (Appeal No. A-10-847).[1]  (Filing No. 11-3 at ECF 6–7.)  Through counsel, Fletcher filed a brief in the Nebraska Court of Appeals.  (Filing No. 10-4 at ECF 135–42.)  Fletcher also sought and received permission from the Nebraska Court of Appeals to file a *pro se* supplemental brief, but Fletcher failed to file the brief within the time specified by the Nebraska Court of Appeals.  (Filing No. 11-3 at ECF 6.)  The Nebraska Court of Appeals affirmed the state district court's judgment on June 28, 2011, and Fletcher did not petition the Nebraska Supreme Court for further review.  (Filing No. 11-3 at ECF p. 7.)  The state district court dismissed Fletcher's remaining postconviction claims on January 12, 2011. (Filing No. 10-5 at ECF 26–28.)  Fletcher appealed (Appeal No. A-11-104).  The Nebraska Court of Appeals denied relief on October 5, 2011, and the Nebraska Supreme Court denied a petition for further review on December 14, 2011.  (Filing No. 11-3 at ECF 10–11.)

---

[1] In Nebraska, an order granting an evidentiary hearing on some issues presented in a postconviction motion, but denying a hearing on others, is a final and appealable order.  *State v. Poindexter*, 766 N.W.2d 391, 403 (Neb. 2009).

7

**D.      Second Postconviction Action and Appeal**

Fletcher filed a second postconviction motion in the state district court on January 5, 2012.  (Filing No. 10-6 at ECF 62–70.)  The state district court denied the motion on March 12, 2013, finding all of Fletcher's claims both procedurally barred and meritless. (Filing No. 10-6 at ECF 91–100.)  Fletcher attempted to appeal the court's order (Appeal No. A-13-316), but his appeal was dismissed as untimely by the Nebraska Court of Appeals on June 5, 2013.  (Filing No. 11-3 at ECF 14.)  The Nebraska Supreme Court denied a petition for further review on August 28, 2013.  (Filing No. 11-3 at ECF 14.)

**E.      State Habeas Corpus Action and Appeal**

Fletcher filed a petition for writ of habeas corpus in the state district court on December 5, 2013.  (Filing No. 11-2 at ECF 64–69.)  The state district court denied relief on January 21, 2014.  (Filing No. 11-2 at ECF 102–03.)  Fletcher appealed (Appeal No. A-14-108).  The Nebraska Court of Appeals affirmed the state district court's judgment on August 12, 2014, and the Nebraska Supreme Court denied a petition for further review on October 15, 2014.  (Filing No. 11-3 at ECF 20.)

**F.      Federal Habeas Corpus Action**

Fletcher filed his habeas corpus petition in this court on October 29, 2014. (Filing No. 1.)  Respondent filed an answer, brief, and the relevant state court records in response to the petition.  (Filing Nos. 10, 11, 12, and 13.)  Fletcher filed a brief in support of his petition.  (Filing No. 16.)  This matter is fully submitted for disposition.

## II.  STANDARD OF REVIEW

**A.      Exhaustion Requirement**

8

As set forth in 28 U.S.C. § 2254:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)   the applicant has exhausted the remedies available in the courts of the State; or

    (B)   (i)   there is an absence of available State corrective process; or

        (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454–55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue

in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

**B.      Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d).  Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state

court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's

11

discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496–97 (8th Cir. 2011) (internal quotation marks and citations omitted).

### III.  DISCUSSION

Fletcher raised 31 claims in his petition. The Court will discuss Fletcher's claims in the paragraphs that follow.

### A.   Claims of Ineffective Assistance of Counsel

Fletcher raised numerous claims concerning the ineffective assistance of his lawyer, Robert G. Hayes.  Hayes represented Fletcher at trial and on direct appeal.  All of Fletcher's claims concerning Hayes's representation of him are procedurally defaulted. The Court will begin its discussion by summarizing Fletcher's claims.

### 1.   Summary of Claims

Fletcher argued in Claims Eight through Eleven and Thirteen that his lawyer was ineffective for failing to impeach the testimony of several witnesses by presenting evidence of statements they made on prior occasions that were inconsistent with their testimony at trial.  (Filing No. 1 at ECF 25–31.)

Fletcher argued in Claims Twelve, Fourteen through Twenty-Two, and Twenty-Four that his lawyer was ineffective for failing to (a) review the 911 call with Fletcher prior to trial; (b) object when the State played a recording of a 911 call made from the 2829 "U" Street location; (c) require that the State provide scientific evidence to prove Exhibits 32, 39, and 44 were burglar's tools; (d) object when the State failed to call Robert Turvey as a witness;

12

(e) object to the jury instruction on the burglary count; (f) conduct his own private investigation of the burglary allegation; (g) produce video evidence of one of the crime scenes, (h) "put a lot more effort into trying to disprove the value of [certain] property"; (i) object to the introduction of numerous exhibits; (j) depose witnesses prior to trial; and (k) inspect the State's evidence prior to trial. (Filing No. 1 at ECF 29–38.)

Finally, Fletcher argued in Claims Twenty-Five and Twenty-Nine that his lawyer provided ineffective assistance during the direct appeal because he failed to follow the "Anders Procedures" for withdrawal, and also failed to preserve Fletcher's federal constitutional issues. (Filing No. 1 at ECF 38–39, 42–45.)

## 2.   Procedural Default

Fletcher never properly raised any of these arguments in the Nebraska Court of Appeals or the Nebraska Supreme Court. Fletcher's first and only opportunity to properly raise these issues in the state district court was during his first postconviction action. *See State v. Robinson*, 827 N.W.2d 292, 302 (Neb. 2013) ("[W]hen a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief."). Fletcher could not have properly raised any of the issues during his second postconviction action because, as determined by the state district court during the second action, he knew of the issues at the time he filed his first postconviction action. (*See* Filing No. 10-6 at ECF 93–94.)

Fletcher raised many of these issues in his first postconviction motion (Filing No. 10-4 at ECF 14, 29–33, 35–40, 42–44), but he did not raise them in the Nebraska Court

13

of Appeals or the Nebraska Supreme Court. As discussed above, Fletcher prosecuted two appeals with respect to his first postconviction action. In his first appeal, Fletcher argued only that the state district court erred when it made no findings with respect to three of the issues raised in the postconviction motion. (Filing No. 10-4 at ECF 135–42.) In Fletcher's second appeal, the Nebraska Court of Appeals denied relief because Fletcher did not specifically argue any errors. (*See* Filing No. 11-3 at ECF 10.) Thus, Fletcher did not present any of these claims in one complete round in Nebraska's state courts and they are procedurally defaulted.

Fletcher did not argue, much less demonstrate, cause and prejudice for the default of these claims or that the Court's failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (stating claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim). Accordingly, Fletcher is not entitled to relief on any of these claims.

### 3.     Deference to State Court Findings

Even if these claims were not procedurally defaulted, the Court would determine Fletcher is not entitled to relief. The state district court's order dated January 12, 2011, can be reasonably construed as a general rejection of all of Fletcher's claims concerning Hayes's representation of him at trial and on direct appeal. The court wrote, in relevant part:

14

> This was a straight forward uncomplicated case that hinged on the credibility of the eyewitnesses, that is, whether their testimony as to the identification of Fletcher was to be believed by the jury.  The defense was that Fletcher was not the perpetrator of the offenses and that the witnesses were mistaken.  Clearly the jury found otherwise.
>
> Certainly Fletcher is unhappy with the result but this was not due to the lack of effectiveness of his trial and appellate counsel.  His contention that Hays was ineffective is without merit.

(Filing No. 10-5 at ECF 28.)  Fletcher has not shown that the state district court's adjudication of his arguments "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Specifically, Fletcher did not show that his lawyer's performance was deficient or that such performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Therefore, Fletcher is not entitled to relief on any of his claims concerning the ineffective assistance of counsel.

**B.    Procedurally Defaulted Due Process Claims**

Claims One, Five through Seven, and Twenty-Six through Twenty-Eight are due process claims that are procedurally defaulted.  As above, the Court will begin its discussion by summarizing the claims and will then explain why the claims are procedurally defaulted.

**1.    Summary of Claims**

Fletcher argued in these claims that he was denied due process of law because (a) he was convicted of burglary, theft by unlawful taking, and possession of burglar's tools

15

based on incomplete definitions of the crimes in the jury instructions; (b) the State failed to turn over various exhibits to the defense and the exhibits were "material"; (c) the State allowed false evidence to go uncorrected at trial; (d) the prosecutor vouched for the credibility of two of the States's witnesses during closing arguments and described Fletcher as a liar during closing arguments, which was "improper"; (e) the citation was not properly filed in county court; and (f) portions of the information and amended information were not sufficiently descriptive.  (Filing No. 1 at ECF 16–18, 22–25, 39–42.)

### 2.    Procedural Default

Fletcher raised most of these arguments in his first postconviction motion (Filing No. 10-4 at ECF 14–19, 27–34, 45–47, 50–51), though they were almost entirely raised as issues of state law and not as federal due process claims.  However, Fletcher's only opportunity to properly raise these issues in the Nebraska Court of Appeals and the Nebraska Supreme Court was in his direct appeal because the arguments represent issues known to him at the time of trial and at the time of his direct appeal.  *See*, *e.g.*, *State v. Gibilisco*, 778 N.W.2d 106, 114 (2010) (reiterating that, in Nebraska, if the facts that support the issue raised in a postconviction proceeding were known at the time of trial or appeal, and the related assignments of error were not raised, they are procedurally barred).  Fletcher did not raise any of these due process arguments on direct appeal.  As such, the Court finds that Fletcher did not properly present his federal due process claims in one complete round in Nebraska's state courts.  Fletcher did not argue, much less demonstrate, cause and prejudice for the default of these claims or that the Court's failure to consider the claims will result in a fundamental miscarriage of justice.

## C.  Procedurally Defaulted Insufficient Evidence Claim

Fletcher argued in Claim Two that the evidence presented at his trial was insufficient to prove he burglarized the Hitzel residence.  (Filing No. 1 at ECF 18–19.)  The crux of Fletcher's argument is that there was no evidence to support a finding that he *forcibly* entered the home because "[n]one of the witnesses were able to testify that the door [to the home] was secured and that Fletcher removed any obstacle in order to open the door to the residence."  (Filing No. 1 at ECF 19.)

Fletcher did not raise this specific argument in one complete round in Nebraska's state courts.  On direct appeal, Fletcher's arguments with respect to the burglary conviction centered on various witnesses' identifications of him, not on whether the State proved he forcibly entered the Hitzel residence.  (Filing No. 10-3 at ECF 64–68.)  Furthermore, while he did raise this argument in his postconviction motion, he did not present the argument in his brief in the Nebraska Court of Appeals (*see* Filing No. 10-4 at ECF 135–40) or in a petition for further review in the Nebraska Supreme Court (*see* Filing No. 11-3 at ECF 7 (docket sheet reflecting no petition for further review filed in the relevant appeal)).

Even if Claim Two was not procedurally defaulted, the Court would find that Fletcher's argument lacks substantive merit.  Hitzel saw Fletcher "open[] the door and step[] inside the kitchen."  *Fletcher*,  2009 WL 2767720, at *1.  The Nebraska Supreme Court has held that "any act of physical force, however slight, by which an obstruction to the entry of premises is removed is sufficient to prove the essential element of breaking as used in the statutory offense of burglary,"  *State v. Greer*, 596 N.W.2d 296, 301 (Neb. 1999), and "*the opening of a closed door* is a breaking within the meaning of the definition

17

of a burglary." *Id.* (emphasis added).  For these reasons, Fletcher is not entitled to relief on Claim Two.

## D.     Properly Raised and Exhausted Insufficient Evidence Claims

Fletcher argued in Claims Three and Four that the evidence presented at his trial was insufficient to prove he took or exercised control over movable property or possessed burglar's tools.  (Filing No. 1 at ECF 18–21.)  Fletcher presented these arguments in Nebraska's state courts in one complete round and they were adjudicated by Nebraska's state courts on the merits.

In the context of § 2254, the Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Based on the evidence presented at Fletcher's trial, the Nebraska Court of Appeals held the jury properly convicted Fletcher of burglary, theft by unlawful taking, and possession of burglar's tools.   The court stated:

> Fletcher's arguments relating to insufficiency of the evidence center on the identifications of him made by various witnesses, his claim that evidence connecting him to the red car was lacking, and a claim that the State failed to adduce sufficient evidence to establish that the alleged burglary tools found in the red car were used to pry the stereo from the dashboard of the Caprice.
> As we previously set forth, Schultz' and Hitzel's identifications of Fletcher were properly admitted and tied Fletcher to the duplex. Further, Berry's testimony that Fletcher was the individual who he saw flee the red car is sufficient to connect Fletcher to the red car. Additionally, Hitzel's amplifier equipment was also located in the car and Fletcher was identified as being in the duplex minutes prior to Hitzel's noticing his amplifier was missing. Finally, Berry testified that a small pry mark was found on the inside of a blue Caprice from which a stereo was taken, the width of which was similar to that

18

of the screwdriver found in the red car. Berry testified that he has investigated approximately 100 vehicle break-ins and that screwdrivers are commonly used tools in committing that crime. Thus, when viewed in the light most favorable to the State, it is clear that Fletcher's allegations regarding the insufficiency of the evidence to support his convictions are without merit.

*Fletcher*, 2009 WL 2767720, at *7.

Fletcher has not rebutted the state court's factual findings on this issue and he has not shown the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, he is not entitled to relief on these claims.

### E.   Claims Challenging Habitual Criminal Enhancement

In Claims Thirty, Thirty-One, and Thirty-Two, Fletcher complains about the  state district court's finding that he was a habitual criminal.  Fletcher is not entitled to relief on any of these claims.

In Claim Thirty, Fletcher complains he was denied due process of law because the exhibits offered by the State were insufficient to support the habitual-criminal enhancements.  (Filing No. 1 at ECF 45–54.)  In Claim Thirty-Two, he complains the commitment order misstates the date on which Fletcher was found to be a habitual criminal.  (Filing No. 1 at ECF 54–55.)  Fletcher did not raise these arguments on direct appeal, in his first or second postconviction motions, or in his state habeas corpus petition. He raised similar arguments in a habeas corpus action he filed directly with the Nebraska Supreme Court, but that action was promptly dismissed without briefing or argument. (*See* Filing No. 11-1 at ECF 2–14; Filing No. 11-3 at ECF 17.)  Thus, Fletcher did not raise these

arguments in one complete round in Nebraska's state courts and they are procedurally defaulted.  As above, Fletcher did not argue, much less demonstrate, cause and prejudice for the default of these claim or that the Court's failure to consider them will result in a fundamental miscarriage of justice.

Fletcher complains in Claim Thirty-One that he was denied due process of law during the enhancement proceedings because a state district court judge, rather than a jury, made the factual determination that he was a habitual criminal.  (Filing No. 1 at ECF 54.)  Fletcher raised this argument in one complete round in Nebraska's state courts in his state habeas corpus action, and it was adjudicated by Nebraska's state courts on the merits.

The state district court considered and rejected the general argument Fletcher now raises here.  The court wrote:

> Plaintiff asserts that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), requires a jury, not a judge to make all findings of fact on any fact, the finding of which, results in an enhanced sentence. The plaintiff has stated the general rule accurately. However, as the defendant points out, there is a recognized narrow exception to the general rule when the fact sought to be established is a prior conviction.  *See Alleyne v. United States*, 133 S.Ct. 2151, 2160 (2013) n. 1, *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d. 350 (1998), *United States v. Rucker*, 2013 U.S. App. LEXIS 22491 (8th Cir 2013), *United States v. Nolan*, 397 F.3d 665, 667 n. 2 (8th Cir 2005).

(Filing No. 11-2 at ECF 103.)  The Nebraska Court of Appeals affirmed the state district court's decision on this issue, and the Nebraska Supreme Court denied a petition for further review.  (Filing No. 11-3 at ECF 20.)

Fletcher has not shown the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Indeed, the grant of a writ of habeas corpus is not warranted here because the Nebraska state courts correctly applied the relevant Supreme Court holdings in *Apprendi* and *Alleyne*.

For the foregoing reasons, the Court finds Fletcher is not entitled to relief on any of the claims he raised in his habeas corpus petition.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Fletcher has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues raised in Fletcher's habeas corpus petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the Court will not issue a certificate of appealability in this case. Accordingly,

IT IS ORDERED that:

1.   The Petition for Writ of Habeas Corpus (Filing No. 1) is dismissed with prejudice.

2.   The Court will enter a separate judgment in accordance with this Memorandum and Order.

3.   The Court will not issue a certificate of appealability.

21

DATED this 15th day of September, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge